# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JAMES FRANCIS,

        Petitioner,    :    Case No. 1:16-cv-606

  - vs -                          District Judge Michael R. Barrett
                                        Magistrate Judge Michael R. Merz

WANZA JACKSON-MITCHELL[1],
 Warden, Warren Correctional
Institution

                              :

        Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner James Francis, is before the Court for decision on the merits upon the Petition (ECF No. 1), the State Court Record (ECF No. 6), the Return of Writ (ECF No. 17), and Petitioner's Reply (ECF No. 21). Francis pleads the following ground for relief:

> **GROUND ONE:** Francis received ineffective assistance of counsel when his trial attorney provided grossly inaccurate information regarding Francis' sentence and sentencing exposure, resulting in prejudice. 6th Amendment.
>
> **SUPPORTING FACTS**: i) Francis' gross-misinformation claim was never adjudicated on the merits in state court; ii) If adjudicated, the state court decision was contrary to, or an unreasonable application of, established federal law; iii) If adjudicated, the state court decision involved an unreasonable determination of the facts in light of the state post-conviction record.

---

[1] The caption is amended to reflect the name of the Warden who has custody of Petitioner as of the date of this Report.

(Petition, ECF No. 1, PageID 2-3, ¶ 15).

**Litigation History**

Francis was indicted on four counts of rape of a child under the age of ten years old by a Butler County grand jury in October 2011. Following plea negotiations, Francis, through counsel, pleaded guilty to all four counts with the age specification dismissed (State Court Record, ECF No. 6, PageID 16-19). Francis was sentenced to an aggregate term of twenty years to life and classified as a Tier III sex offender. Francis filed a late *pro se* Notice of Appeal and the Twelfth District dismissed the appeal on that basis. *Id.* at PageID 22-23, 26-27. Represented by counse,l who continues to represent him in this case, he filed a Motion for Delayed Appeal, *id*. at PageID 32-34, which the Twelfth District also denied. *Id.* at PageID 50. Also represented by current counsel, Francis filed a petition for postconviction relief on November 12, 2012. *Id.* at PageID 51-55. The trial court dismissed the petition on cross-motions for summary judgment. *Id.* at PageID 83-88. Francis appealed, and the Twelfth District Court of Appeals affirmed denial of Francis's ineffective assistance of trial counsel for erroneous sentencing information, but, remanded for a ruling on Francis' ineffective assistance of counsel claim on failure to file a timely notice of appeal. *State v. Francis,* 2014-Ohio-443, 8 N.E.3d 371 (12th Dist. Feb. 10, 2014), appellate jurisdiction declined, 139 Ohio St. 3d 1401 (2014) (*Francis I*).

On remand by the court of appeals, the trial court denied Francis' post-conviction relief (Decision and Entry, State Court Record ECF No. 6, PageID 214-22). The Court of Appeals affirmed. *State v. Francis*, 12th Dist. Butler No. CA2014-09-187, 2015-Ohio-2221 (Jun. 8, 2015) (*Francis II*). Francis did not pursue an appeal to the Supreme Court of Ohio, instead filing his habeas corpus Petition in this Court on June 3, 2016. The Court overruled an initial Motion to

Dismiss the Petition as time-barred (ECF Nos. 13, 14) and the parties subsequently filed the Return and Traverse.

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Petitioner contends his trial attorney provided ineffective assistance by providing grossly inaccurate information regarding Francis' sentence and sentencing exposure, resulting in prejudice.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111, 122 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Strickland*, 466 U.S. at 694; accord *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Twelfth District Court of Appeals decided Francis's erroneous information ineffective assistance of trial counsel claim in *Francis I* and held:

> **{¶ 24}** Francis' first claim is that his trial counsel provided him with ineffective assistance by promising him that he would receive a "flat 10-year sentence" for pleading guilty to the four counts of child rape. In support of this claim, Francis points to his affidavit in which he stated that a few days before his plea hearing, his trial counsel told him that he had spoken with the trial judge and that his sentence would be "a flat ten years if I pled and that I would be eligible for Judicial Release after five (5) years and good time under House Bill 86[,]" and "[t]hat my plea of guilty was based on my counsel's representation that I would receive a ten year sentence with the possibility of Judicial Release and good time." Francis also points to his trial counsel's affidavit in which counsel averred that "[d]uring plea negotiations, it was my understanding that if Mr. Francis plead guilty [sic], he would receive a sentence of 10 years imprisonment."
>
> **{¶ 25}** Francis asserts that his claim that his trial counsel "promise[d]" him that he would receive a flat ten-year sentence was "corroborated" by his trial counsel's affidavit. However, a review of trial counsel's affidavit and the entire record of this case, including the plea and sentencing hearing transcripts, belies Francis' claim that his trial counsel promised him that he would he receive a flat, ten-year sentence if he pled guilty to the four counts of child rape.
>
> **{¶ 26}** As noted earlier, the Ohio Supreme Court has stated that in reviewing a PCR petition, "a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun,* 86 Ohio St.3d 279, 1999 Ohio 102, 714 N.E.2d 905, paragraph one of the syllabus. "In determining the credibility of supporting affidavits in postconviction relief proceedings," courts "should consider all relevant factors[,]" including:
>
>> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence

> proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. *Id.* at 754-756, 651 N.E.2d at 1323-1324.
>
> Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur.

*Calhoun* at 284-285.

{¶ 27} Applying these factors to this case we note that the same judge reviewing the PCR petition in this case also presided at Francis' plea and sentencing, and thus was in the best position to judge the credibility of Francis' claim that his trial counsel promised him that he would be sentenced to a "flat ten years" in prison if he pled guilty. Francis is obviously interested in the success of his own petition. Francis' argument that he was promised that he would be sentenced to prison for only ten years is contradicted by his statement during the plea colloquy that the only promise he received in return for his guilty plea was that the state would delete the language in the indictment regarding the age of his victims.

{¶ 28} Francis's [sic] trial counsel did state in his affidavit that "[d]uring plea negotiations, it was my understanding that if Mr. Francis plead [sic] guilty, he would receive a sentence of 10 years imprisonment." However, Francis' trial counsel does not state in his affidavit that he *promised* Francis that he would only receive a ten-year sentence. Additionally, there is nothing in the transcript of the sentencing hearing to show that either Francis or his trial counsel objected when the trial court stated that Francis could be sentenced to four consecutive terms, and there is nothing in the transcript of the sentencing hearing to show that Francis or his trial counsel were surprised when the trial court ordered Francis to serve his concurrent ten-year terms on counts three and four consecutive to his concurrent ten-year terms on counts one and two. In light of these circumstances, we conclude that the trial court did not abuse its discretion in determining that Francis failed to present sufficient evidence to establish a substantive ground for relief by his

ineffective assistance claim regarding the sentencing advice he
received from his trial counsel.

*Francis I*, 2014-Ohio-443.


**Did the Ohio courts decide the ineffective assistance of trial counsel claim on the merits?**

Petitioner asserts this is not a decision on the merits and is therefore not entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA") for three reasons. First, he says, the Twelfth District reviewed the trial court decision under an abuse of discretion standard, whereas federal law required the trial court to decide if the post-conviction evidence established defective performance and prejudice (Traverse, ECF No. 21, PageID 358, citing *Hill v. Lockhart,* 474 U.S. 52 (1985)). Second, he asserts the claim the Ohio courts adjudicated was a voluntary plea claim and not an ineffective assistance of trial counsel claim. *Id.* Third, the Ohio courts "refused to consider the postconviction affidavits that formed the basis of the claim." *Id.* Each of these points deserves separate consideration.

**Ohio Standard of Review – Abuse of Discretion**

Francis had argued to the Twelfth District that it should apply a *de novo* standard of review. *Francis II*, 2015-Ohio-2221, ¶ 9. The court noted that Ohio Revised Code § 2953.21 provides three methods for adjudicating a petition for post-conviction relief, methods embodied respectively in §§ 2953.21(C), (D), and (E). *Id.* at ¶¶ 10-13. Although the trial court had failed to distinguish these methods in its opinion, the court interpreted the trial court decision as having been made

under § 2953.21(C):

> Nevertheless, we interpret the trial court's decision as one that summarily dismissed Francis' petition under R.C. 2953.21(C) rather than as one that granted summary judgment to the state under R.C. 2953.21(D). We base this determination on the fact that, in denying Francis' PCR petition, the trial court undoubtedly considered Francis' and his trial counsel's affidavits, both of which were evidence dehors the record, in evaluating Francis' ineffective assistance claims. Additionally, the trial court noted toward the end of its decision and entry, that while neither party had requested an evidentiary hearing, such a hearing was not necessary "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not set forth sufficient operative facts to establish substantive grounds for relief[,]" and that "Francis fail[ed] to establish substantive grounds for relief in his petition."

*Id.* at ¶ 15. Rejecting Francis's claim that it should apply a *de novo* standard, the court found that the Supreme Court of Ohio required that an abuse of discretion standard be applied to the overall question of whether a post-conviction petition should be granted or denied. *Id.* at ¶ 12, citing *State v. Gondor*, 112 Ohio St. 3d 377, 2006-Ohio-6679, ¶ 58.

Francis argues to this Court that federal law "required the trial court to determine if the post-conviction evidence established" ineffective assistance of trial counsel (Traverse, ECF No. 21, PageID 358). For this broad proposition – that federal law imposes a particular obligation on state trial courts – Francis relies on *Hill*, in which the Supreme Court upheld denial of the writ without an evidentiary hearing because the petitioner "failed to allege the kind of prejudice from the allegedly incompetent advice of counsel that would have entitled him to a hearing." 474 U.S. at 53.[2] Justice Rehnquist's opinion does not indicate Hill filed any post-conviction proceeding in the state court, much less imposed any procedural requirements on such a proceeding.

The question before this Court is not whether the trial and appellate courts here properly

---

[2] Note that *Hill* was decided before the AEDPA replaced the evidentiary hearing regime of *Townsend v. Sain*, 372 U.S. 293, 313 (1963), and before the Court severely restricted such hearings even under AEDPA in *Cullen v. Pinholster*, 563 U.S. 170 (2011).

8

followed Ohio procedure, but whether the final result is a decision on the merits entitled to deference under AEDPA. In upholding the trial court's conclusion, the Twelfth District held it was not an abuse of discretion to reject, on credibility grounds, Hill's and his trial attorney's affidavits after considering them. *Francis II*, 2015-Ohio-2221, at ¶ 11. It noted that, contrary to Francis's claim that his attorney's affidavit corroborated his own, "a review of trial counsel's affidavit and the entire record of this case, including the plea and sentencing hearing transcripts, belies Francis' claim that his trial counsel promised him that he would he receive a flat, ten-year sentence if he pled guilty to the four counts of child rape." *Francis I*, 2014-Ohio-443, at ¶ 25. It held the trial judge could properly evaluate the affidavits under *State v. Calhoun*, 86 Ohio St. 3d 279 (1999), rather than accepting them at face value. It found:

> Francis' argument that he was promised that he would be sentenced to prison for only ten years is contradicted by his statement during the plea colloquy that the only promise he received in return for his guilty plea was that the state would delete the language in the indictment regarding the age of his victims.

*Id.* at ¶ 27. Reviewing the trial court's decision as one made under Ohio Revised Code § 2953.21(C), it concluded that "the trial court did not abuse its discretion in determining that Francis failed to present sufficient evidence to establish a substantive ground for relief by his ineffective assistance claim regarding the sentencing advice he received from his trial counsel." *Id.* at ¶ 28.

"Abuse of discretion" can mean many things in the law. It can mean the trial court's "clear error of judgment." *Landrum v. Anderson*, 813 F.3d 330, 334 (6th Cir. 2016) (quoting *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006)). But "[a]n abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 678 F.3d 409, 416 (6th Cir. 2012),

vacated and remanded on other grounds at 133 S.Ct. 1722 (2013). Or, an abuse of discretion occurs when (1) the district court's decision is clearly unreasonable, arbitrary, or fanciful; (2) "the decision is based on an erroneous conclusion of law; (3) the district court's findings are clearly erroneous[.]" *Badalementi v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990) (applying Sixth Circuit law); *accord Beil v. Lakewood Eng'g,* 15 F.3d 546, 551-52 (6th Cir. 1994); *Southward v. S. Cent. Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir. 1993). A district court abuses its discretion "when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Schlaud v. Snyder*, 717 F. 3d 451, 457 (6th Cir. 2013), vacated and remanded on other grounds at 134 S.Ct. 2899 (2014).

In the context of this case, the Twelfth District's conclusion that the trial judge did not commit an abuse of discretion in dismissing the post-conviction petition is based on a finding, sufficient under Ohio law, that the affidavits when considered in context of the trial record, were not a sufficient basis to grant relief.

**Deciding the Wrong Claim**

Francis also claims the Twelfth District decision is not entitled to deference because it "adjudicated a claim that Francis never presented," to wit, a claim that his plea was not voluntary (Traverse, ECF No. 21, PageID 358). The Magistrate Judge disagrees. Although the Ohio courts adverted to the plea colloquy, it was in the context of evaluating the credibility of Francis's Affidavit. In the Affidavit, he claimed he had been promised a ten-year sentence. The credibility of the Affidavit was properly evaluated against his statement during the plea colloquy that he had

10

not been promised anything other than dismissal of the under-ten-years old specification.

**Refusal to Consider Affidavits**

Finally, Francis argues the Twelfth District decision is not on the merits because the trial court "refused to consider the postconviction affidavits." (Traverse, ECF No. 21, PageID 358). To the contrary, the Twelfth District found that the trial judge "undoubtedly considered" the affidavits. *Francis* I, 2014-Ohio-443, at ¶ 15. That is a finding of fact fully entitled to deference here, because "[a] review of the trial judge's decision[,]" *id.*, confirms it. "Considering" is not the same as "accepting as true."

In sum, the Twelfth District's decision in *Francis II* was a decision on the merits of his ineffective assistance of trial counsel erroneous information claim. It is therefore entitled to deference under AEDPA, unless Francis shows it is contrary to or any objectively unreasonable application of clearly established federal law as determined by the Supreme Court of the United States,28 U.S.C. § 2254(d)(1), or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)).

**The Merits**

Francis begins this part of the argument by asserting that providing misinformation about sentencing constitutes deficient performance, relying on *Padilla v. Kentucky*, 559 U.S. 356 (2009), and *Lee v. United States*, 137 S. Ct. 1958 (2017) (Traverse, ECF No. 21, PageID 359). In *Padilla*

the Court held that misadvice about deportation as a result of conviction was not amenable to the collateral/direct distinction among consequences of conviction and that bad advice about deportation did constitute deficient performance. *Lee* also involved deportation as a collateral consequence on which the petitioner was misadvised. Although this is not a deportation case, the Court accepts the proposition that misadvice about a possible direct consequence – e.g., the imprisonment sentence exposure – would usually be deficient performance.

The difficulty is with proof of the misadvice. Francis's Affidavit claims his attorney (Matthew D. Minor) promised him a "flat ten years if I pled and that I would be eligible for Judicial Release after five (5) years and good time under House Bill 86." He asserts his guilty plea was based on this representation. (Affidavit, State Court Record, ECF No. 6, PageID ¶¶ 5, 7. Minor's Affidavit says "it was his understanding during plea negotiations that if Mr. Francis plead[ed] guilty, he would receive a sentence of 10 years imprisonment." *Id.* at PageID 76, ¶ 2. He does not say that the trial judge conveyed that understanding; it might instead have come from prosecutors. He reports that Francis made a statement at sentencing "that he prepared himself without my knowledge stating that he was only entering a guilty plea under the advice of counsel." *Id.* at ¶ 4.

Plea negotiations obviously took place before the change of plea hearing and Mr. Minor represented Francis at that hearing (Transcript, State Court Record, ECF No. 17-1, PageID 331). Judge Sage carefully explained the sentences – "each count carries a sentence of life imprisonment with eligibility for parole after ten years of actual incarceration." *Id.* at PageID 334. Francis affirmed that, other than "what's stated in the plea[,]" no one had made him any promises to induce the plea. *Id.* at PageID 339. The record does not show that Francis ever spoke up to indicate he understood something different about possible sentences or that his attorney had told him that he would get ten years flat time if he pleaded.

On the date of sentencing Francis did indeed make a statement:

> I was advised to take the plea because I was told regardless of the evidence, I could still be found guilty at trial and receive a life sentence. . . . And during the process, I did feel my defense was far from the best of my attorney's ability. Thus, I feel I have no other choice but to accept the terms of the plea described to me by the attorneys.

(Transcript, ECF No. 17-2, PageID 346). Francis never suggested what his attorney could have done differently or even what the terms of the plea were as described by his attorneys. .

In explaining why he imposed consecutive sentences, the judge noted that there were two separate victims(Transcript, State Court Record, ECF No. 17-2, PageID 349). After the sentence was imposed, neither Francis nor Minor said anything, much less anything to express surprise at the sentence. Considering all the evidence together – the Affidavits plus the silence at sentencing – the state courts' determination on the deficient performance prong of *Strickland* is not an unreasonable determination of the facts.

With respect to the prejudice prong of *Strickland*, Petitioner claims he would have rejected the plea and gone to trial had he known what the possible sentences could have been. Of course, even if he did not know that from his attorney, he certainly heard it from Judge Sage.

Moreover, he has not suggested why it would have been rational to reject the plea agreement. All he said in his statement at sentencing was that his attorney had not done his best. His Affidavit in post-conviction says nothing on this point (State Court Record, ECF No. 6, PageID 54-55). In a handwritten addition to his Affidavit, he avers that Mr. Minor told him "that issues about *Miranda*, the sufficiency of the indictment, discovery violations, and alibi/DNA could be raised on appeal after a guilty plea and sentence." *Id*. at PageID 55, ¶ 17. He gives no indication what those issues would have been or what evidence he would have had to support them. His only claim in his habeas Petition is that he relied on misadvice about the sentence.

13

Attempting to show prejudice in the Traverse, Petitioner's counsel writes:

> This is a rare case where the two victims testified at grand jury that Francis had not raped them. Doc. No. 6, postconviction petition, PAGEID 73, 80-81. This testimony was disclosed to Francis in discovery and corroborates Francis' professed innocence. *Id.* While it was reasonable for Francis to mitigate trial risk by accepting a flat 10-year term with opportunities for judicial release and good-time credits, it is unlikely he would have accepted two life terms with only a possibility of parole after 20-years. This is inconsistent with his professed innocence and the strong exculpatory evidence from the victims' grand jury testimonies.

(ECF No. 21, PageID 360-61.) These sentences strongly overstate the evidence about prejudice that was before the trial court on post-conviction. Francis did not protest his innocence at sentencing; nor did he do so in his Affidavit. If he has repeatedly and consistently protested his innocence, counsel has given no record reference for those protestations. Respecting the allegedly exculpatory grand jury testimony by the victims, the only reference this Court is given is to a statement in the post-conviction petition that "the victims had recanted their stories at the grand jury. Exhibit D." (State Court Record, ECF No. 6, PageID 73.) Exhibit D is a copy of the Entry denying leave to file a delayed appeal. Presumably counsel intended to refer to Exhibit C, *id.* at PageID 80-81, which is the prosecutor's motion for leave to reveal grand jury testimony as required by *Brady v. Maryland*, 373 U.S. 83 (1963); the motion says nothing about the actual content of the intended disclosure. Thus, neither the state courts nor this Court have any evidence of the alleged recantations.

The Indictment charges four counts of rape of a child under ten for which the mandatory penalty is life imprisonment without the possibility of parole. Francis was thirty-six at the time of his plea (Transcript, ECF No. 17-1, PageID 333). Thus, the possibility of parole at age fifty-six would be a substantial benefit. Minor acknowledged at sentencing that his attorney had told him he could be convicted "regardless" of the evidence which implies an evaluation of the evidence

14

including whatever was revealed from the grand jury testimony. This supports the conclusion that Francis believed the case was "losable" after considering his attorney's evaluation.

On that state of the record, the Ohio courts' conclusion that Francis had not established the prejudice prong of *Strickland* either.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

April 5, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections

within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See* ); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).